UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LORI MARZIANO,

    Plaintiff,

    v.

COUNTY OF MARIN, *et al.*,

    Defendants.

No. C-10-2740 EMC

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**

**(Docket No. 4)**

---

Plaintiff Lori Marziano has filed suit against Defendants the County of Marin and Teresa Torrence-Tillman, one of its supervisors, for, *inter alia*, failure to provide reasonable accommodations and retaliation. Currently pending before the Court is Defendants' motion to dismiss the fifth and sixth causes of action in the complaint. Those claims are: (1) discrimination in violation of the Americans with Disabilities Act ("ADA"), the California Fair Employment and Housing Act ("FEHA"), and Title VII; and (2) violation of 42 U.S.C. § 1983, based on violations of the First Amendment, the equal protection clause, the due process clause, and the ADA. Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court hereby **GRANTS** in part and **DENIES** in part Defendants' motion.

## I.    FACTUAL & PROCEDURAL BACKGROUND

In her complaint, Ms. Marziano alleges as follows.

Ms. Marziano began employment with the County in March 1999 as a deputy probation officer in the Probation Department. *See* Compl. ¶¶ 7, 14. In March 2005, she was in an accident which resulted in a shattered tibial plateau and torn left meniscus in the left leg. *See id.* ¶ 15. In

May 2006, she was still suffering from the effects of the accident. *See id.* ¶ 16. Ms. Marziano thus asked for permission to telecommute and was given permission to do such two days out of the week. *See id.* ¶ 17. "Telecommuting allowed Ms. Marziano to reduce the amount of time she spent on her injured foot which reduced the pain and swelling she experienced and allowed her to work more productively." *Id.*

Ms. Marziano telecommuted between May 2006 and September 2006. In September 2006, however, her director (Nicki Kuhn) informed her that she could no longer telecommute. *See id.* ¶¶ 17-18. The added time on her injured foot caused Ms. Marziano to experience more pain as well as stress. In October 2006, she went out on stress leave. *See id.* ¶ 20.

Ms. Marziano stayed out on stress leave until March 2007. When she returned to work, she was transferred from the Juvenile Division to Adult Probation even though she had asked to remain in the position she held in October 2006 to aid her recovery. *See id.* ¶¶ 20-21.

In August 2007, Ms. Marziano went on stress leave a second time, not only because of her continued pain from her foot but also because of stress she experienced as she was not being properly trained in her new job (due to her supervisor's absence). *See id.* ¶ 22. She returned to work in August 2008. *See id.* ¶ 23.

Approximately a month later, in September 2008, Ms. Marziano asked that her disability be accommodated by allowing her to telecommute two times a week. Her request for accommodation was supported by a letter from her physician, Dr. Pinner, who explained, *inter alia*, that she was suffering from reflex sympathetic dystrophy (RSD). *See id.* The County asked Dr. Pinner for more information on multiple occasions, which he provided each time. *See id.* ¶¶ 24-25. During this time, Ms. Marziano asked to meet with the County regarding her requested accommodation, but the County refused, stating that it did not have sufficient information. *See id.* ¶ 27. Ms. Marziano also asked for a temporary accommodation of telecommuting once a week, but this request was denied. *See id.* ¶¶ 28-29.

In March 2009, the County ordered Ms. Marziano to undergo a fitness-for-duty examination. *See id.* ¶ 31. In April 2009, Ms. Tillman had a meeting with Ms. Marziano and told her that, based on the examination, she was not fit for duty. *See id.* ¶ 34. This was contrary to the opinion of Ms.

Marziano's physician, Dr. Pinner. *See id.* Moreover, the examining doctor had been given incorrect information about what Ms. Marziano's job duties were. *See id.*

Ms. Tillman also told Ms. Marziano that she would be moved from a full-time to a part-time position. The reason for the move had nothing to do with Ms. Marziano's fitness for duty. *See id.* ¶ 35. "The rationale provided was Ms. Marziano's alleged punctuality issues." *Id.* However, if Ms. Marziano had been allowed to telecommute twice a week, as requested, then she would not have had any alleged punctuality issues. *See id.*

According to Ms. Marziano, after asking for a reasonable accommodation for her disability, she experienced retaliation – *e.g.*, her work schedule was cut by eight hours, and she was harassed. *See id.* ¶ 39. Ms. Marziano also claims that she experienced retaliation after she told the County that she was going to file a claim with the U.S. Equal Employment Opportunity Commission ("EEOC") and California Department of Fair Employment and Housing ("DFEH"). *See id.* ¶ 46. Finally, Ms. Marziano asserts that she suffered adverse employment actions because of the failure to accommodate her disability. *See id.* ¶ 39.

Based on the above allegations, Ms. Marziano has asserted the following claims for relief:

(1) Retaliation in violation of the ADA and FEHA.

(2) Failure to provide reasonable accommodation in violation of the ADA and FEHA.

(3) Failure to engage in a timely good faith interactive process.

(4) Harassment based on disability.

(5) Discrimination in violation of the ADA, FEHA, and Title VII.

(6) Violation of § 1983.

In their pending motion to dismiss, Defendants challenge only the fifth and sixth causes of action.

## II. DISCUSSION

A. Legal Standard

Defendants have moved to dismiss the fifth and sixth causes of action pursuant to Federal Rule of Civil Procedure 12(b)(6). Under Rule 12(b)(6), a party may move to dismiss based on the failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). A motion to

dismiss based on Rule 12(b)(6) challenges the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Business v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). In considering such a motion, a court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party, although "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than sheer possibility that a defendant acted unlawfully." *Id.*

B.   Section 1983 Claim

First at issue is Ms. Marziano's claim under 42 U.S.C. § 1983, which provides that

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. As reflected by the language above, "[t]o establish a § 1983 claim, a plaintiff must show that an individual acting under the color of state law deprived him of a right, privilege, or immunity protected by the United States Constitution or federal law." *See Levine v. City of Alameda*, 525 F.3d 903, 905 (9th Cir. 2008). In the instant case, Ms. Marziano asserts that she has been deprived of rights protected by (1) the ADA, (2) the equal protection clause of the federal Constitution, (3) the First Amendment, and (4) the due process clause of the federal Constitution.

   1.   County

With respect to the County, Defendants argue that the § 1983 claims should be dismissed because Ms. Marziano has failed to adequately plead that the County was acting pursuant to a policy or custom. *See Monell v. Department of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978)

(holding that municipalities and other local governments are deemed "persons" under § 1983 and are subject to liability thereunder where an alleged constitutional violation is the result of official policy or custom); *see also Gillette v. Delmore*, 979 F. 2d 1342, 1346047 (9th Cir. 1992) (discussing municipal liability). According to Defendants, Ms. Marziano's conclusory allegation that "Defendants['] action and failures . . . constitute a pattern and practice of violations of the Civil Rights Laws," Compl. ¶ 82, is insufficient.

Ms. Marziano disputes that she has not alleged enough to support her claim against the County. Nevertheless, she states that she is willing to provide additional allegations to support her municipal liability theory. *See* Opp'n at 5. Accordingly, the Court dismisses all § 1983 claims against the County and grants Ms. Marziano leave to amend. The Court notes that it is granting leave to amend only with respect to the First Amendment and due process-based claims. The ADA and equal protection-based claims are dismissed with prejudice because, as discussed below, Ms. Marziano has conceded that those claims should be dismissed altogether.

2. Ms. Tillman

   a. <u>ADA</u>

In their motion, Defendants argue that the ADA cannot be a predicate for Ms. Marziano's § 1983 claim based on *Vinson v. Thomas*, 288 F.3d 1145 (9th Cir. 2002) (holding that "a plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in her individual capacity to vindicate rights created by Title II of the ADA or section 504 of the Rehabilitation Act"). The Court need not address the merits of Defendants' argument because Ms. Marziano has stated in her opposition that she will no longer "be proceeding under the theory that the ADA can support her cause of action under 42 U.S.C. Section 1983." Opp'n at 6 n.1. Accordingly, Defendants' motion to dismiss the § 1983 claim based on the ADA (both as to Ms. Tillman and the County) is granted. The dismissal is with prejudice.

   b. <u>Equal Protection</u>

Defendants argue that the § 1983 claim, to the extent based on the equal protection clause, should also be dismissed because Ms. Marziano is asserting a "class-of-one" claim (based on her disability), *see* Compl. ¶ 82, and the Supreme Court has held that a class-of-one claim is not viable

5

in the public employment context. *See Engquist v. Oregon Dep't of Agriculture*, 128 S. Ct. 2146 (2008).

In her papers, Ms. Marziano fails to make any opposition to Defendants' argument. Without ruling on the merits of Defendants' argument,[1] the Court views Ms. Marziano's failure to oppose the argument as a concession that the equal protection-based claim should be dismissed. Accordingly, the Court hereby dismisses the § 1983 claim based on the equal protection clause (both as to Ms. Tillman and the County). The dismissal is with prejudice.

        c.        <u>First Amendment</u>

Defendants argue that the First Amendment-based claim should be dismissed because "[t]he First Amendment is not implicated when an individual speaks 'as an employee upon matters of personal interest,'" Mot. at 6, and here Ms. Marziano's speech was in essence a request for an accommodation which is a matter of personal interest and not public concern.

The Court concludes that the First Amendment-based claim against Ms. Tillman should not be dismissed. As reflected in her papers, Ms. Marziano is not contending that her request for a reasonable accommodation was a matter of public concern. Rather, she is asserting that she was retaliated against after she said that she would file a complaint with the EEOC and the DFEH, which is a matter of public concern. This assertion is supported by the complaint, in which Ms. Marziano alleges that "[i]mmediately following informing COUNTY that she was going to file with the DFEH and EEOC, a separate and distinct act of retaliation occurred when COUNTY forced Ms. Marziano at threat of termination to accept part-time work." Compl. ¶ 46 (also alleging that "[t]his was direct retaliation for engaging in the protected activity of requesting an accommodation *and informing her managers that she intended to file a claim of discrimination*") (emphasis added). The question,

---

[1] The Court acknowledges that there is authority to support Defendants' position. *See, e.g.*, *Kaiser v. Highland Cent. Sch. Dist.*, 1:08-CV-0436 (LEK/RFT), 2008 U.S. Dist. LEXIS 98936, at *4-5 (N.D.N.Y. Dec. 8, 2008); *Dellafosse v. County of Contra Costa*, No. C-07-3948 MMC, 2008 U.S. Dist. LEXIS 24534, at *4 (N.D. Cal. Mar. 27, 2008). However, it may be argued that not all § 1983 equal protection claims based on disability should be treated as class-of-one claims, such as where the plaintiff asserts that an employer has a pattern or practice of discriminating against disabled persons. Even though disabled persons are not a suspect class, such a claim is based on the person being a member of a class, as opposed to being singled out for differential treatment. In the instant case, however, Ms. Marziano's allegations assert an individualized claim.

therefore, is whether a complaint made to a public agency about discrimination qualifies as a public concern.[2] *See Alpha Energy Savers, Inc. v. Hansen*, 381 F.3d 917, 924 (9th Cir. 2004) (noting that "[w]hether a public employee or contractor's expressive conduct addresses a matter of public concern is a question of law").

> Most courts considering whether an EEOC charge is protected speech . . . have eschewed a per se rule against finding such speech is or is not protected, and have instead considered, on a case-by-case basis, whether the nature and content of the EEOC charge at issue relate only to matters directed [at] the employee's self-interest or employment conditions, which are not matters of public concern, or whether the charge relates to or includes other matters which are legitimate matters of public concern.

*Sanders v. Leake County Sch. Dist.*, 546 F. Supp. 2d 351, 357 (S.D. Miss. 2008); *see also Page v. Connecticut Dep't of Pub. Safety*, 185 F. Supp. 2d 149, 161 (D. Conn. 2002) (noting that "[c]ourts in the Second Circuit have held that an EEOC complaint based on race and sex discrimination is not necessarily a matter of public concern, and therefore, is not automatically protected speech under the First Amendment"). Thus, for example, a district court in New York has stated that, where a complaint of gender discrimination "relate[s] only to a personal employment grievance," then there is no public concern at issue. *Kantha v. Blue*, 262 F. Supp. 2d 90, 101 (S.D.N.Y. 2003). In contrast,

> complaints concerning gender discrimination are protected if the employee wanted to debate issues of sex discrimination, she sought relief against pervasive or systemic misconduct by a public agency or public officials, or her speech was part of an overall effort . . . to correct allegedly unlawful practices or bring them to public attention.

*Id.* (internal quotation marks omitted).

---

[2] At the hearing, Ms. Marziano argued that her announcement that she would file a claim with the EEOC and DFEH was not only speech protected by the First Amendment but also an exercise of the right to petition the government for redress of grievances -- also protected by the First Amendment. She contends that this is especially so since such a filing with the administrative agencies is a prerequisite to filing a lawsuit. However, under Ninth Circuit law, "a public employee's litigation must involve a matter of public concern in order to be protected by *either* the Petition Clause or the Speech Clause of the First Amendment." *Rendish v. City of Tacoma*, 123 F.3d 1216 (9th Cir. 1997) (emphasis added). Therefore, it does not matter whether the Court considers Ms. Marziano's statement regarding filing an EEOC/DFEH complaint as speech or as a petition to redress grievances. It is the subject matter of the petition that informs whether a public employee's First Amendment rights are implicated.

1    The Ninth Circuit, however, does not appear to follow that approach. In *Alpha Energy*
2 *Savers*, the Ninth Circuit specifically rejected the

> narrow view that a "run-of-the mine single-plaintiff discrimination case" does not meet the public concern test. We have never required that discriminatory conduct or corruption must occur with regularity or any degree of frequency, or exceed some threshold of significance, in order to satisfy the public concern test. Rather, "we have held that when government employees speak about corruption, wrongdoing, misconduct, wastefulness, or inefficiency by other government employees, . . . their speech is inherently a matter of public concern." That rule applies to invidious discrimination as well – whether it consists of a single act or a pattern of conduct. Disputes over racial, religious, or other such discrimination by public officials are not simply individual personnel matters. They involve the type of governmental conduct that affects the societal interest as a whole – conduct in which the public has a deep and abiding interest. Litigation seeking to expose such wrongful governmental activity is, by its very nature, a matter of public concern.

*Alpha Energy Savers*, 381 F.3d at 926-27.

Given the broad language used by the Ninth Circuit in *Alpha Energy Savers*, the Court denies Defendants' request to dismiss the First Amendment-based claim against Ms. Tillman. *See Lucke v. Multnomah County*, No. CV-06-1149-ST, 2008 U.S. Dist. LEXIS 71861, as *123-24 (D. Ore. Sept. 22, 2008) (noting that "the broad language in *Alpha Energy Savers* appears to elevate the act of filing an administrative complaint with the EEOC or BOLI to a matter of public concern protected by the First Amendment"). *Alpha Energy Savers* has not been overruled, either by the Ninth Circuit or the Supreme Court. *See also Connick v. Myers*, 461 U.S. 138, 148 n.8 (1983) (discussing a prior Supreme Court case which involved a "protest racial discrimination -- a matter inherently of public concern"). For example, in *Garcetti v. Ceballos*, 547 U.S. 410 (2006), which Defendants cited in their papers and referred to at the hearing, the Supreme Court did not address the issue of whether a single-plaintiff discrimination case meets the public concern test. Rather, the issue in *Garcetti* was "whether the First Amendment protects a government employee from discipline based on speech made pursuant to the employee's official duties." *Id.* at 413. *Garcetti* did not involve a claim of discrimination.

///

///

8

        d.      <u>Due Process</u>

In her opposition, Ms. Marziano clarifies that her due process-based § 1983 claim is based on Defendants' decision to cut her employment from full-time to part-time without first giving her a pre-deprivation hearing. Defendants argue for dismissal, asserting that there is no legal precedent to establish that a pre-deprivation hearing is necessary before the terms of a disabled person's employment are changed based on the person's inability to perform the job because of the disability. Defendants' argument is not especially convincing. Defendants assume as a fact that Ms. Marziano could not perform her job because of her disability, but, in fact, Ms. Marziano alleges in her complaint that (1) the doctor who conducted her fitness-for-duty examination was given incorrect information about what her job required and that (2) her own doctor concluded that she could perform her job. *See* Compl. ¶ 34. At this stage in the proceedings (*i.e.*, a Rule 12(b)(6) motion), Ms. Marziano's allegations must be taken as true. *See Cousins*, 568 F.3d at 1067.

Defendants also argue that dismissal with respect to Ms. Tillman is appropriate because (1) "[t]he ADA is a comprehensive remedial scheme for disability accommodation in the workplace and an additional constitutional claim is inappropriate" (citing *Vinson*) and because (2) "whatever property interest [Ms. Marziano] had in avoiding placement on a reduced schedule, this interest was not clearly established at the time of the alleged deprivation," and therefore Ms. Tillman has qualified immunity. Reply at 4. The first argument is not especially persuasive. *Vinson* involved a § 1983 claim based on the ADA; here, there is a § 1983 claim based on the due process clause. Furthermore, as noted above, Ms. Marziano has alleged that her disability did not preclude her from doing her job, an allegation that must be accepted as true. As for the second argument, the Court declines to make any qualified immunity ruling given that the issue of qualified immunity was not raised until the reply brief and, as a result, there has not been full briefing on the matter.

Notwithstanding the above, the Court ultimately concludes that the due process-based claim should be dismissed at this juncture because Ms. Marziano has failed to include allegations in her complaint establishing that she has a protected property interest – allegations necessary to establish a due process claim. "[P]roperty interests are not created by the Constitution, but rather by 'existing rules or understandings that stem from an independent source such as state law.'" *Nunez v. City of*

*Los Angeles*, 147 F.3d 867, 872 (9th Cir. 1998). The Ninth Circuit has noted that, "[i]n California, the terms and conditions of public employment are generally 'fixed by the statute, rules or regulations creating it, not by contract (even if one is involved).'" *Id.* Here, Ms. Marziano has not pointed to a state statute or other independent source containing the terms and conditions of her employment. *Compare Nunez*, 147 F.3d at 872 (noting that the Los Angeles City Charter "precludes arbitrary 'suspensions, demotions in rank, . . . removals,' or other separation from the LAPD [but] does not address promotions"); *Ganley v. County of San Mateo*, No. C06-3923 TEH, 2007 U.S. Dist. LEXIS 93489, at *7 (N.D. Cal. Dec. 20, 2007) (looking at, *e.g.*, the San Mateo County Civil Service Commission Rules to determine what the terms and conditions of the plaintiff's employment were); *American Fed'n of State, County & Municipal Employees v. County of L.A.*, 146 Cal. App. 3d 879, 889 (1983) (noting that "the extent of the protected interest or entitlement (i.e., the terms and conditions of employment) is governed purely by statute," here, the county civil service commission rules, which made it "clear that no county employee has a legitimate claim of entitlement to be free from layoff or reduction in position when reasons of economy or lack of work eliminate a need for the position"). Nor has Ms. Marziano explained what rights she was afforded under that statute or independent source – *e.g.*, could she be terminated or demoted for cause only. *See Portman v. County of Santa Clara*, 995 F.2d 898, 905 (9th Cir. 1993) (stating that, "[b]ecause by statute the public defender of Santa Clara County is an at-will employee, Portman had no property interest in his job" and "[a]n action under the Due Process Clause cannot lie for his termination"); *Dorr v. County of Butte*, 795 F.2d 875, 876 (9th Cir. 1986) (stating that, "[u]nder California law, a 'permanent employee,' dismissible only for cause, has 'a property interest in his continued employment which is protected by due process'").

Ms. Marziano has cited two cases in support of her assertion that she has a protected interest. But ultimately neither case establishes that, based on the allegations in her complaint, she has a protected interest. In *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985), the Supreme Court simply reiterated the above principles – *i.e.*, that the terms and conditions of the employment are determined by statute or another independent source:

10

> Property interests are not created by the Constitution, "they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law . . . ." The Ohio statute plainly creates such an interest. Respondents were "classified civil service employees," entitled to retain their positions "during good behavior and efficient service," who could not be dismissed "except . . . for . . . misfeasance, malfeasance, or nonfeasance in office." The statute plainly supports the conclusion, reached by both lower courts, that respondents possessed property rights in continued employment.

*Id.* at 538-39. The same is true of *Skelly v. State Personnel Board*, 15 Cal. 3d 194, 207-08 (1975) (noting that, under the California Act, state employees "may not be dismissed or subjected to other disciplinary measures unless facts exist constituting 'cause' for such discipline as defined in sections 19572 and 19573," and that, "[i]n the absence of sufficient cause, the permanent employee has a statutory right to continued employment free of these punitive measures"). No analogous protection against change in hours is alleged here.

Accordingly, the Court dismisses, with leave to amend, the due process-based claim.

C.   <u>Discrimination in Violation of ADA, FEHA, and Title VII</u>

In her fifth cause of action, Ms. Marziano asserts a claim for discrimination – against the County only – in violation of the ADA, FEHA, and Title VI. The allegations underlying this claim are as follows: (1) "Ms. Marziano is a disabled Caucasian female who has performed satisfactorily throughout her 11 year career with [the County]" and (2) "[the] COUNTY has allowed similarly situated non-Caucasian-female employees to telecommute" as well as "similarly situated employees who suffered from conditions other than RSD." Compl. ¶¶ 75, 77. These allegations suggest that Ms. Marziano is asserting that the County discriminated against her on the basis of her disability and her race.

Defendants argue that the discrimination claims should be dismissed, whether pursuant to the ADA, FEHA, or Title VII, because Ms. Marziano's allegation that other similarly situated employees were treated more favorably is too conclusory pursuant to Supreme Court case law, namely, *Ashcroft*, 129 S. Ct. at 1937, and *Twombly*, 550 U.S. at 544.

///

///

### 1. Disability Discrimination

Both the ADA and FEHA, but not Title VII, prohibit employment discrimination on the basis of disability. *See* 42 U.S.C. § 12112; Cal. Gov't Code § 12940(a). The problem with Defendants' argument regarding the disability discrimination claims is that a plaintiff is not required by make a showing of intentional discrimination by relying on evidence of how similarly situated employees are treated.[3] Evidence that similarly situated employees are treated more favorably is one way to establish intentional discrimination but it is not the only way. *See Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 936 (8th Cir. 2006) (stating that "[c]ontrasting the treatment of similarly situated employees outside of the protected class with the employee's treatment is one way to point towards a race-based motivation."); *McGuinness v. Lincoln Hall*, 263 F.3d 49, 53 (2d Cir. 2001) (in race discrimination case, stating that "[a] showing that the employer treated a similarly situated employee differently is 'a common and especially effective method' of establishing a prima facie case of discrimination, but it 'is only one way to discharge that burden'"); *Heard v. Lockheed Missiles & Space Co., Inc.*, 44 Cal. App. 4th 1735, 1755 (1996) (stating that, "[a]lthough proof regarding similarly situated employees outside the protected class may be one way of raising an inference of intentional discrimination, it is not the only way") (emphasis omitted).

In the instant case, Ms. Marziano seems to assert that similarly situated employees without RSD were treated more favorably as a basis for her disability discrimination claims. But the precise nature of the alleged discrimination is not clear.

The Court also notes that Ms. Marziano has included other allegations suggestive of intentional discrimination. In particular, in her complaint, she includes an allegation that she "receiv[ed] negative performance evaluations for the period of time when she was not provided an

---

[3] *See Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1246 (9th Cir. 1999) (noting that, "to state a prima facie case under the ADA, [a plaintiff] must show that (1) she is a disabled person within the meaning of the ADA; (2) she is a qualified individual, meaning she can perform the essential functions of her job; and (3) [the employer] terminated her because of her disability"); *Scotch v. Art Institute of Cal.*, 173 Cal. App. 4th 986, 1004 (2009) (stating that "[a] prima facie case generally means the plaintiff must provide evidence that (1) the plaintiff was a member of a protected class, (2) the plaintiff was qualified for the position he or she sought or was performing competently in the position held, (3) the plaintiff suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests a discriminatory motive").

12

accommodation [for her disability]." Compl. ¶ 39; *see also McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 96-97 (2d Cir. 2009) (noting that "[d]iscrimination in violation of the ADA includes . . . 'not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability'" and that "a plaintiff makes out a prima facie case of disability discrimination arising from a failure to accommodate by showing each of the following: '(1) [P]laintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations'"). But, as Defendants legitimately pointed out at the hearing, the above allegation was not clearly connected to her disability discrimination claim and, as pled in the complaint, the disability discrimination claim rested on similarly situated persons being treated more favorably.

Given the problems identified above, as well as Ms. Marziano's agreement at the hearing that the claim was in need of clarification, the Court grants the motion to dismiss the disability discrimination claim, with leave to amend.

2. Other Discrimination

Unlike the disability discrimination claims, the other discrimination claims asserted by Ms. Marziano (whether based on Title VII or FEHA) seem to rest solely on allegations that similarly situated employees were treated more favorably. Thus, here, the Court must examine whether the similarly situated allegations made by Ms. Marziano are too conclusory, as argued by Defendants.

As a preliminary matter, the Court should note that Ms. Marziano has done more than make a naked assertion that similarly situated persons were treated more favorably. She has given some specificity by asserting that similarly situated persons were given the opportunity to telecommute while she was not. For some courts, that kind of specificity is sufficient. *See, e.g.*, *Akins-Brakefield v. Philip Envtl. Servs. Corp.*, No. 08-cv-710-DRH, 2010 U.S. Dist. LEXIS 25067, at *34-35 (S.D. Ill. Mar. 17, 2010) (with respect to claim pursuant to Equal Pay Act, taking note of plaintiff's allegations that, *inter alia*, "she complained to the HR specialist about the fact that she had not been given the same raise as similarly situated male employees, was later given a retroactive raise, but

that the raise was still not as much as the raises given to similarly situated male employees"; finding "this sufficient to state claims for willful EPA violations under *Bell* and *Iqbal*"); *Williams v. USW, AFL-CIO, Local 7697*, No. 1:09-cv-743, 2010 U.S. Dist. LEXIS 22295, at *13-14 (S.D. Ohio Mar. 10, 2010) (finding *Twombly* problem where plaintiff failed to allege, *e.g.*, that "Local 7697 treated similarly-situated non-Black employees who had pending grievances more favorably than [he] was treated"; adding that "conclusory" assertion that "'younger workers are treated more favorably'" was "an insufficient 'formulaic recitation of the element[] of a cause of action'"); *Frank v. Potter*, 1:08-CV-00595, 2009 U.S. Dist. LEXIS 83990, at *19-20 (S.D. Ohio Sept. 15, 2009) (concluding that "Plaintiff does more than proffer conclusory allegations that similarly-situated persons received different treatment" – she "identifies her supervisors whom she alleges engaged in discrimination" and the "specific actions they took" and "[s]he alleges that both men and employees of a different race, African-American, were treated differently").

Admittedly, there are other courts who have concluded otherwise. Some courts have suggested that a general statement that similarly situated employees were treated more favorably even with respect to a specific employment action is not enough – *i.e.*, the example needs to be fleshed out with more details. *See, e.g.*, *Francis v. Giacomelli*, 588 F.3d 186, 195-96 (4th Cir. 2009) (describing African-American plaintiff's allegation that "defendants have never initiated or undertaken the actions of terminating employment and physically removing [white] employee[s]" as "conclusory and insufficient" and "nothing more than the sort of unadorned allegations of wrongdoing to which *Twombly* and *Iqbal* are directed" in ruling that plaintiff failed to "state a plausible claim for relief"); *Myers v. Maryland Auto. Ins. Fund*, No. CCB-09-3391, 2010 U.S. Dist. LEXIS 80011, at *13 (D. Md. Aug. 9, 2010) (taking note of plaintiff's statement that "'[y]ounger employees did not receive similar negative performance evaluations as Plaintiff, nor were they placed on a "three month action plan"'" but ultimately concluding that this allegations was too conclusory under *Twombly* because it was "unsupported by any factual allegations, such as the employees to whom it refers, their job titles, or how their performance allegedly was deficient"). Some courts have gone even further and suggested that specific allegations need to be made to demonstrate how the employees are similarly situated. *See, e.g.*, *DeLoatch v. Harford County Bd. of*

*Educ.*, No. CCB-09-3125, 2010 U.S. Dist. LEXIS 47635, at *5-6 (D. Md. May 14, 2010) (noting that, "[a]lthough the complaint references Ms. Hamilton, it does not allege that she was employed in a similar capacity, had a comparable criminal history, or when and in what manner her employment was terminated" and so "[t]his allegation is therefore too general to establish that Ms. Hamilton was similarly situated to Ms. DeLoatch or treated more favorably by the Board").

The Court declines to take the latter approach. The former approach is more reasonable because, as noted by one district court, there is nothing about Federal Rule of Civil Procedure 8 which requires the naming of names. *See Frank*, 2009 U.S. Dist. LEXIS 83990, at *19 (S.D. Ohio Sept. 15, 2009) (rejecting "Defendant[']s critique[] [of] Plaintiff's Title VII claims on the basis that she has 'failed to allege a single similarly-situated individual'" because "the Court does not find a requirement at the pleadings stage that Plaintiff name names").

That being said, Ms. Marziano's complaint, as it currently standas, does not clearly state the basis of her discrimination claim. Is it race? Gender? Again, Ms. Marziano agreed at the hearing that she should amend the complaint to provide clarity, and therefore the other discrimination claims are dismissed, with leave to amend.

### III. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted in part and denied in part. More specifically:

(1) The Court dismisses with prejudice the § 1983 claim based on the ADA, both as to the County and Ms. Tillman.

(2) The Court dismisses with prejudice the § 1983 claim based on the equal protection clause, both as to the County and Ms. Tillman.

(3) The Court dismisses with leave to amend the § 1983 claim based on the First Amendment against the County. The Court denies Defendants' motion to dismiss the § 1983 claim based on the First Amendment against Ms. Tillman.

(4) The Court dismisses with leave to amend the § 1983 claim based on the due process clause, both as to the County and Ms. Tillman.

(5) The Court dismisses with leave to amend the ADA/FEHA disability discrimination claim.

(6) The Court dismisses with leave to amend the Title VII/FEHA "other" discrimination claim. Any amended complaint shall be filed and served by October 29, 2010. This order disposes of Docket No. 4.

IT IS SO ORDERED.

Dated: October 4, 2010

_____
EDWARD M. CHEN
United States Magistrate Judge

16